UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TAMMY WARREN,  )
　)
　*Plaintiff*,  )
　)
v.  )　No. 3:23-00077-SKL
　)
COMMISSIONER OF SOCIAL SECURITY,  )
　)
　*Defendant*.  )

## MEMORANDUM AND ORDER

Plaintiff Tammy Warren ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Doc. 12, Doc. 13, & Doc. 18].[1] Plaintiff also filed a reply brief pursuant to Rule 8 of the Supplemental Rules [Doc. 19]. For the reasons stated below: (1) Plaintiff's request for relief [Doc. 12 & Doc. 13] will be **GRANTED**, (2) the Commissioner's request that his final decision denying benefits be affirmed [Doc. 18] will be **DENIED**, and (3) this case will be remanded for further administrative proceedings.

### I.　ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed her applications for DIB and SSI on June 14, 2019, alleging disability beginning December 28, 2018. Plaintiff's claims

---

[1] Plaintiff's filings are styled as a motion for summary judgment with a supporting memorandum, consistent with the practice prior to the effective date of the new Supplemental Rules.

were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was conducted by telephone due to the COVID-19 pandemic on March 8, 2022. On April 1, 2022, the ALJ found Plaintiff had not been under a disability as defined in the Social Security Act at any time from the alleged onset date of December 28, 208, through the date of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born July 28, 1977, making her 41 years old on the alleged onset date, which is considered a "younger person." 20 C.F.R. §§ 404.1563(c); 416.963(c). She has at least a high school education and is able to communicate in English. She has past relevant work as a collection clerk and an administrative clerk. The collection clerk position considered a skilled occupation in the Dictionary of Occupational Titles ("DOT"), performed at the sedentary exertional level. The administrative clerk position is considered a semi-skilled occupation in the DOT, performed at the light exertional level.

### B. Medical Records

In her Adult Disability Report, Plaintiff alleged disability due to depression, PTSD, spinal stenosis, "Neck issues," and "nerve issues." (Tr. 348). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing held March 8, 2022, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed

the transcript of the hearing (Tr. 46-72).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

3

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements through June 30, 2021. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, December 28, 2018. At step two, the ALJ found, Plaintiff has the following severe impairments: dysfunction of major joints, spinal disorders of the cervical and lumbar spine, obesity, depressive disorders, anxiety disorders, trauma and stressor-related disorders, and attention deficit/hyperactivity disorders ("ADHD").

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional restrictions:

- She can lift and carry, push and pull 20 pounds occasionally, 10 pounds frequently.
- She can sit for 6 hours out of an 8-hour day.
- She can stand and/or walk for 4 hours out of an 8-hour day.
- She can frequently handle, finger and reach overhead bilaterally.

4

- She can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds.

- She can only occasionally balance, stoop, kneel, crouch, and crawl.

- She should avoid concentrated exposure to extreme heat and cold, vibrations, and workplace hazards like exposed heights and dangerous machinery.

- She can never have contact with the public.

- She can have only occasional contact with co-workers and supervisors.

- She can understand, remember, and carry out simple and low-level detailed instructions and tasks where workplace changes are occasional and gradually introduced.

(Tr. 31).

At step four, the ALJ found Plaintiff was not capable of performing her past relevant work as a collection clerk or administrative clerk, as those occupations are actually or generally performed. At step five, however, the ALJ found there were occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including router, laundry worker, and bagger (Tr. 37).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset of disability date through the date of the ALJ's decision.

IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and this case remanded for an "immediate award of benefits, or alternatively, another hearing." [Doc. 13 at Page ID # 3226]. She argues the ALJ "improperly evaluated medical source opinions," including opinions from Robert

5

Blaine, M.D., and Morgan Anderson, PAC [*id.* at Page ID # 3216-20]. She further argues the "ALJ's evaluation of Plaintiff's symptoms is inadequate," as is the ALJ's stated rationale for her analysis of the "paragraph B criteria" [*id.* at Page ID # 3220-25]. Finally, she argues the "Notice of Hearing was deficient and did not comply with the requirements in HALLEX I-2-3-15(D)." [*Id.* at Page ID # 3226].

A. **Standard of Review**

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative

6

decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

B.     **The ALJ's Evaluation of Medical Source Opinions**

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff filed her applications for DIB and SSI on June 14, 2019. Accordingly, as both parties acknowledge, the applicable regulation for consideration of medical opinion evidence is 20 C.F.R. § 404.1520c.[2] Under the new regulation, instead of simply deferring

---

[2] Section 404.1520c is the applicable regulation for DIB claims, and § 416.920c is the applicable regulation for SSI claims. The two regulations are identical, and any citation to the DIB regulation should be interpreted as also applying to the SSI claim at issue in this case.

to medical sources, an ALJ is required to consider multiple factors in evaluating the evidence, including (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. The new rule "notably 'reduc[es] the articulation standards required for ALJs in assessing medical source opinions.'" *Gourley v. Comm'r of Soc. Sec.*, No. 2:21-CV-99, 2022 WL 4546376, at *5 (E.D. Tenn. Sept. 28, 2022) (quoting 3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:13 (2nd ed.)). "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. Aug. 2, 2019) (citation omitted). While the ALJ is required to consider the relevant factors, the ALJ is not required to explain their consideration in the written decision. 20 C.F.R. § 404.1520c(b)(2).

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(2).

If a source offers multiple opinions, the ALJ is not required to articulate their assessment of every single medical opinion; rather, they can articulate how they considered all of that source's opinions "in a single analysis." *Id.* § 1520c(b)(1).

The ALJ began her explanation of Plaintiff's assessed physical RFC[3] by detailing Plaintiff's testimony at the administrative hearing and Plaintiff's representations from her most recent function report. The ALJ then discussed additional treatment records, including Plaintiff's physical therapy records. Next, the ALJ addressed the medical opinion evidence as follows:

> As for medical opinions and prior administrative medical findings, the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from the claimant's medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings in this case as follows:
>
> As it regards the claimant's physical functional abilities, the undersigned finds mostly persuasive the prior administrative medical findings of state agency medical consultants Kanika Chaudhuri, M.D., and Thomas Thrush, M.D. (Exhibits B1A-B2A and B7A-B8A). Dr. Chaudhuri placed the claimant at the equivalent of the light exertional work level with occasional postural activities and frequent overhead reaching (Exhibits B1A-B2A). Dr. Thrush found the same as Dr. Chaudhury except that the claimant can stand and/or walk for a total of 4 hours (Exhibits B7A-B8A). These administrative findings, particularly those of Dr. Thrush, are supported by and consistent with the overall record, except that I find environmental limitations and additional manipulative limitations to be warranted by the claimant's spinal and major joint dysfunction disorders (see Exhibits B3F, B7F/27, B25F, B32F/37, B34F/10, B38F/1, and B45F/2).
>
> Additionally, the undersigned finds somewhat persuasive the medical opinion of physical consultant Robert Blaine, M.D. (Exhibit B39F). Dr. Blaine opined that the claimant could stand or walk for 1 hour total in an 8-hour day with reasonable rest breaks using her cane at least part of the time. She could lift and carry up to about 15 pounds. She could sit for 8 hours with reasonable rest breaks (Exhibit B39F). This opinion is overly restrictive to the undersigned, not sufficiently supported by the physical consultative examination, or consistent with the overall record. For example, at her consultative examination, the claimant had flexor and extensor strength in both upper extremities and the left lower extremity of 5/5

---

[3] Dr. Blaine and PAC Anderson evaluated and/or treated Plaintiff's physical conditions only.

(Exhibit B39F). She got up from her chair and onto the exam table with only moderate difficulty and had moderate limp favoring the right lower extremity.

Furthermore, the undersigned finds generally persuasive the medical opinion of Morgan Anderson, PAC (Exhibit B11F/4). Morgan Anderson opined that the claimant can lift up to 20 pounds but should still avoid repetitive lifting and strenuous activity (Exhibit B11F/4). **The undersigned agrees that the claimant can lift 20 pounds non-repetitively, as such a finding is supported by and consistent with the overall record showing spinal and major joint dysfunction disorders (see Exhibits B39F, B7F/27, B25F, B32F/37, B34F/10, B38F/1, and B45F/2).**

(Tr. 34-35 (emphasis added)).

1. **PAC Anderson**

Regarding PAC Anderson's medical opinion, Plaintiff argues the ALJ erred by agreeing Plaintiff "can lift 20 pounds non-repetitively" (Tr. 35) but then not including a non-repetitive lifting limitation in the hypothetical posed to the VE or in the assessed physical RFC [Doc. 13 at Page ID # 3219-20]. In response, the Commissioner argues:

> Plaintiff . . . complains that the ALJ did not include a restriction of no repetitive lifting in the RFC. Pl.'s Br. at 29-30. But just because the ALJ finds an opinion persuasive does not mean that she needs to adopt the source's findings word-for-word in the RFC. *See, e.g., Bryson v. Comm'r of Soc. Sec.*, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022) ("However, an ALJ need not adopt a medical opinion verbatim, even if he found it persuasive."). Indeed, it is the ALJ – not a doctor – who is charged with formulating Plaintiff's RFC from the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (unpublished).

[Doc. 18 at Page ID # 3246].

In *Bryson*, a State agency consultant opined Bryson could lift/carry 10 pounds occasionally and five pounds frequently with her right arm. No. 3:20-cv-00667, 2022 WL 1134292, at *4 (W.D. Ky. Feb. 2, 2022) ("Bryson RR"), *adopted*, 2022 WL 945318 (W.D. Ky. Mar. 29, 2022) ("Bryson

10

Order"). The ALJ found the consultant's opinion "persuasive," noting it was "supported by documented review of the available medical evidence at the time of her review," and "consistent with the observations from the claimant's other medical providers, diagnostic test results, and physical exam findings, which documented some abnormalities . . . ." Bryson RR, 2022 WL 1134292, at *4 (quoting ALJ's decision; quotation marks omitted). In assessing RFC, the ALJ limited Bryson's use of her right arm to "lifting up to 10 pounds occasionally and less than 10 pounds frequently." *Id.* The court rejected Bryson's argument that the ALJ failed to provide an adequate explanation for the slight difference between the consultant's assessed right arm limitation (lift/carry five pounds frequently) and the RFC the ALJ adopted (lift/carry "less than 10 pounds frequently"). In adopting the Bryson RR, the district court found it was clear the ALJ considered the consultant's opinion, "largely agreed with it," and ultimately "included limitations that conformed with the opinion." Bryson Order, 2022 WL 945318, at *5.

In this case, the ALJ does more than find PAC Anderson's opinion generally persuasive and adopt a nearly identical RFC. Rather, the ALJ clearly states she agrees with PAC Anderson's specific functional assessment that Plaintiff "can lift 20 pounds **non-repetitively**," but then omits any repetition-related limitation from the RFC (Tr. 35 (emphasis added)). This distinguishes *Bryson* from the case at bar.

In *Rudd* (also cited by the Commissioner on this issue), the ALJ found the State agency consultant's restrictive standing/walking assessment "not fully persuasive," considering other evidence in the record, including normal x-rays, notes indicating Rudd's ankle and knee fractures had "resolved," and the fact that Rudd "had not been prescribed an assistive device for walking." 531 F. App'x at 727. In assessing Rudd's RFC, the ALJ found he could stand and walk up to six hours each in an eight-hour workday. Rudd argued the RFC was not supported by substantial

11

evidence because "because no physician opined that Rudd was able to perform the standing and walking requirements of light work." 531 F. App'x at 728. The Sixth Circuit rejected this argument, finding the ALJ relied on other substantial evidence in the record. The Court emphasized "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence," and that requiring the ALJ to base an RFC assessment on a physician's opinion "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* at 728 (citations omitted).

*Rudd* is also distinguishable. In the case at bar, as the Court interprets the parties' arguments and presentation of the record, the issue is not whether there is a medical opinion that aligns with the RFC. Rather, the issue is whether the assessed RFC is supported by substantial evidence and/or adequately explained, when the ALJ expressly found Plaintiff "can lift 20 pounds non-repetitively" but then did not include a "non-repetitive" limitation in the RFC. Of course, the ALJ "need not adopt a medical opinion verbatim, even if [she] found it persuasive." Bryson Order, 2022 WL 945318, at *4 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)); *see also Green v. Comm'r of Soc. Sec.*, ("[R]egardless of the weight assigned to a medical source opinion, the ALJ is not required to adopt all of a medical source's proposed limitations." (citations omitted)). But the ALJ is required to "say enough to allow the appellate court to trace the path of [her] reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011). And here, the ALJ does not provide a path of her reasoning between her non-repetitive lifting finding and the RFC she ultimately assessed. *See Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09cv564, 2011 WL 549861, at *4-5 (S.D. Ohio Feb. 8, 2011) (remanding claim to SSA where ALJ relied on the State agency consultant's opinions but did not explain why additional limitations assessed by the consultant were omitted, finding "a meaningful review was not possible"); *Macapagal v.*

12

*Astrue*, No. C07-03706 HRL, 2008 WL 4449580, at *2-4 (N.D. Cal. Sept. 29, 2008) (remanding claim to SSA where ALJ "found that plaintiff should not use her left hand in a repetitive manner" but hypothetical posed to VE only included a limitation for "occasional"; and agreeing with claimant that "'repetitive' and 'occasional'" are not necessarily "interchangeable and . . . the discrepancy renders the ALJ's decision ambiguous").

Perhaps the ALJ intended for the "occasional" and "frequent" lifting limitations in the assessed RFC to adequately accommodate her and PAC Anderson's "non-repetitive" restriction. However, as far as the Court can tell, the Commissioner does not take that position. And the Court is not permitted to engage in *post hoc* rationalizations not advanced by the ALJ or the Commissioner. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014). Regardless, the ALJ's written decision does not give the reader any reasonably clear indication she intends for the occasional and frequent lifting limitations to accommodate the non-repetitive restriction. *Cf. Reyna v. Comm'r of Soc. Sec.*, No. 17-CV-12762, 2018 WL 5255263, at *8 (E.D. Mich. Sept. 18, 2018) (affirming denial of benefits where ALJ's RFC assessment included the following: "although the claimant is not capable of repetitive up and down or side-to-side movements of the neck, he retains the ability to engage in up and down or side-to-side movements of the neck frequently."), *adopted*, 2018 WL 4443177 (E.D. Mich. Sept. 18, 2018).[4]

---

[4] In *LeFevers v. Commissioner of Social Security*, 476 F. App'x 608 (6th Cir. 2012) ("LeFevers II"), the Sixth Circuit addressed whether the ALJ erred by omitting a non-repetitive lifting limitation in the assessed RFC, where a treating physician had assigned such a limitation in his opinion regarding LeFevers's physical functioning abilities, and the ALJ had assigned the physician's overall opinion "great weight." *See LeFevers v. Astrue*, No. 09-143-GFVT, 2010 WL 11519608, at *6 (E.D. Ky. May 11, 2010), *aff'd in* LeFevers II. The district court found no reversible error by the ALJ and the Sixth Circuit affirmed, noting the treating physician was "not an agency doctor," and further that in "ordinary nomenclature, a prohibition on 'repetitive' lifting does not preclude a capacity for 'frequent' lifting." LeFevers Appeal, 476 F. App'x at 611. LeFevers II, an unpublished case, does not change the Court's analysis because there was no

13

The parties do not address whether the three occupations identified by the VE at step five (where the Commissioner bears the burden of proof) require repetitive lifting, or whether a person with such a limitation can perform jobs available within these occupations. The DOT descriptions of the occupations are not sufficiently clear to rule out a repetitive lifting requirement:

> **Router, DOT# 222.587**: Stamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts.
>
> **Laundry Worker, DOT# 302.685-010**: Tends automatic washing and drying machines to clean and dry household articles and presses household articles, using hand iron: Sorts articles by color and fabric, and loads into automatic washing machine. Adjusts machine settings for temperature, water level, and time duration of wash. Adds measured amounts of detergent, bluing, starches, and fabric softener as required. Removes articles from washer and loads into dryer. Sorts, irons, and folds dried articles. May iron only [IRONER (domestic ser.)]. May perform other housework [HOUSE WORKER, GENERAL (domestic ser.)]. May use electric ironing machine.
>
> **Bagger, DOT# 920.687-018:** Covers garments or household articles with plastic or paper bags by any of following methods: (1) Hangs garment or article on stand and covers with plastic bag. (2) Pulls plastic from rolls, sliding plastic material over article and tearing plastic at perforations to form bag of desired size. (3) Hangs garment on holder in machine and pulls plastic from roll to envelop garment. Pushes button or moves lever to close heating irons that cut and seal plastic to form bag of desired dimensions. Hangs bagged article on slide rail or rack. (4) Drops shirts or folded articles into machine that automatically envelops articles in plastic bags and

---

indication the ALJ expressly adopted the non-repetitive lifting finding made by LeFevers's treating physician.

By contrast, in *Hensley v. Astrue*, 573 F.3d 263, 265-67 (6th Cir. 2009), the ALJ explicitly stated he "adopted the assessment of Dr. Cross," when crafting an RFC that limited Hensley to "occasional" pushing/pulling. The Sixth Circuit reversed the district court and remanded the ALJ's denial of benefits. *Id.* at 266. The court found the ALJ committed reversible error by omitting the non-repetitive pushing/pulling limitation from Hensley's RFC after "adopt[ing]" Dr. Cross's assessment, noting the ALJ "gave no explanation" for the omission. *Id*. Neither party addresses *LeFevers* or *Hensley*.

14

> drops articles into box. Removes boxes from beneath machine when
> filled and replaces boxes.

As a result, on the current record, the Court does not conclude the ALJ's failure to address non-repetitive lifting in her assessment of Plaintiff's RFC was harmless.

The ALJ was required to build a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Couched in terms of the ALJ's assessment of the medical opinion evidence (as the parties have): "No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). As the foregoing demonstrates, the ALJ has not done so in this case. Instead, the Court is left to speculate as to why, after specifically agreeing with PAC Anderson's non-repetitive lifting limitation, the ALJ did not include a non-repetitive lifting limitation in Plaintiff's RFC or otherwise address how the assessed RFC accommodated Plaintiff's non-repetitive lifting limitation. As a result, the Court finds the Commissioner's decision to deny Plaintiff DIB's claim does not rest on a proper application of relevant legal principles, and on the current record, the decision is not supported by substantial evidence.

### C. Other Issues

Considering the above determination, it is unnecessary for the Court to address the other errors asserted by Plaintiff in any detail. It suffices to note the Court has reviewed the parties' arguments and the record and finds Plaintiff has not demonstrated that "all essential factual issues have been resolved and the record adequately establishes [her] entitlement to benefits." *Faucher*

15

*v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (further holding that a judicial award of DIB is "proper only where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking."). Accordingly, remand for further administrative proceedings consistent with this opinion is the proper remedy, including for clarification or reconsideration of PAC Anderson's medical opinion and the non-repetitive lifting limitation[5]; if necessary, additional vocational proof; and reconsideration of Plaintiff's symptoms and/or Dr. Blaine's opinion in light of any reassessment of PAC Anderson's opinion.

To briefly address the issues related to Plaintiff's mental functioning, Plaintiff argues the ALJ did not provide an "adequate rationale" for the ALJ's findings concerning the paragraph B criteria at step three [Doc. 13 at Page ID # 3223]. The ALJ found Plaintiff had moderate limitations in each of the "four broad functional areas" covered by the paragraph B criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c). To qualify as disabled at step three based on a mental functioning impairment and the paragraph B criteria, a claimant must demonstrate an extreme limitation in one broad area of functioning or a marked limitation in two broad areas (*see* Tr. 30).

---

[5] The parties also dispute whether the ALJ properly considered the nature of PAC Anderson's medical opinion. Plaintiff argues the opinion "appears to be a 5-week post-operative visit . . . limited to Plaintiff's progress after the procedure and not an overall opinion of how much Plaintiff is physically able to lift." [Doc. 13 at Page ID # 3219]. The Commissioner contends the ALJ "reasonably concluded that Plaintiff's own doctor would not release her to lifting an amount that her impairments would not permit her to safely do." [Doc. 18 at Page ID # 3246]. The Court's holding herein is not intended to limit the ALJ's further consideration of PAC Anderson's opinion or Plaintiff's claim to any particular topics or issues. As relevant to the Court's holding, the Commissioner does not argue the ALJ interpreted the "non-repetitive" aspect of PAC Anderson's opinion to be a temporary post-surgery limitation.

Plaintiff's argument concerning the ALJ's articulation of the paragraph B criteria essentially asks the Court to re-weigh the evidence, which the Court is not permitted to do. *See Garner*, 745 F.2d at 387. For example, Plaintiff does not acknowledge the ALJ's stated reliance on the medical opinions from the State agency psychological consultants, whose findings tracked the ALJ's (Tr. 30-31; Tr. 86-88; Tr. 104-06; Tr. 162-66; Tr. 200-04). Later in the decision, in discussing Plaintiff's mental RFC, the ALJ also discusses other mental-functioning-related evidence which Plaintiff does not appear to acknowledge in her brief, for example an improved mood in December 2021 due to an increase in medication dosage (Tr. 34; Tr. 2583), and Plaintiff's plan to take a beach vacation, which she communicated to her providers in March 2021 (Tr. 34; Tr. 2422). The Sixth Circuit has "endorsed the practice of searching the ALJ's entire decision for statements supporting [the] step three analysis," noting that it is not necessary to have a section devoted specifically to step three. *Staggs v. Astrue*, No. 2:09-CV-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citing *Bledsoe v. Barhnart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

Plaintiff also makes a one-sentence argument in her 37-page opening brief regarding the paragraph B criteria in relation to her mental RFC: "The ALJ's RFC does not incorporate the psychiatric review technique finding of a limitation in concentrating, persisting, or maintaining pace." [Doc. 13 at Page ID # 3225]. Although the Commissioner responded to this argument in his brief [*see* Doc. 18 at Page ID # 3241], Plaintiff does not address it at all in her reply [*see* Doc. 19]. The Court finds that due to the "striking legal emptiness" of Plaintiff's briefs on this issue, she has waived any argument in support of remand on this basis. *Frank v. Good Samaritan Hosp. of Cincinnati, LLC,* 843 App'x 781, 782 (6th Cir. 2021); *see also Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles that might be buried in the record.").

17

While remand may not necessarily be justified based on the ALJ's analysis of the paragraph B criteria or Plaintiff's mental RFC, the ALJ may nevertheless reconsider these issues during subsequent administrative proceedings. As mentioned in note six, above, the Court's holdings herein are meant to explain the Court's decision, and not to limit the Commissioner to certain topics or particular proceedings on remand.

Finally, as the Commissioner emphasizes, Plaintiff does not allege any harm or prejudice related to the Commissioner's failure to "identify the proper name of the Vocational Expert" at least "75 days before the hearing." [Doc. 13 at Page ID # 3226]. As the Commissioner further points out, Plaintiff did not question the VE's qualifications or testimony at the hearing or in her brief before this Court. Once again, these are issues raised by the Commissioner [*see* Doc. 18 at Page ID # 3249-51] but not addressed by Plaintiff in her opening brief or her reply. Accordingly, the Court finds that even if the Commissioner's failure to timely identify the VE by name constitutes an alleged violation of SSA policy as reflected in HALLEX I-2-3-15(D), any such failure would be at most harmless error, and would not justify a remand of Plaintiff's claim. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (Where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game." (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (plurality opinion))).

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

    (1) Plaintiff's request for relief [Doc. 12 & Doc. 13] is **GRANTED**;

    (2) the Commissioner's request that his final decision denying benefits be affirmed is **DENIED**;

18

(3) this case is remanded for further administrative proceedings consistent with this Memorandum and Order.

ENTER.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE